647 S.E.2d 869

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Michael CUMMINGS, Defendant Below, Appellant.**

No. 33223.

Supreme Court of Appeals of West Virginia.

Submitted May 9, 2007.

Decided June 6, 2007.

Dissenting Opinion of Justice Maynard June 27, 2007.

Concurring Opinion of Justice Starcher June 29, 2007.

Christine M. Hedges, Hedges, Jones, Whittier & Hedges, Spencer, Joshua Downey, Third Year law student, Certified under Rule 10 of the Rules for Admission to the Practice of Law, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Benjamin F. Yancey, III, Assistant Attorney General, Charleston, for Appellee.

BENJAMIN, Justice:

In the instant appeal, appellant Michael Cummings seeks reversal of the November 29, 2005, jury verdict finding him guilty of the felony offenses of attempting to operate a clandestine drug lab and conspiracy to attempt to operate a clandestine drug lab. He was sentenced on March 6, 2006 to consecutive sentences of not less than two nor more than ten years for the Attempt conviction and not less than one nor more than five years for the Conspiracy conviction and fined $5000. On appeal he raises several assignments of error, including sufficiency of evidence to support his conviction, the trial court's failure to suppress certain evidence based upon allegations of an illegal search and the sufficiency of his indictment. After careful review of the record before this Court, including detailed examination of the transcript of Appellant's November 29, 2005, trial, applicable precedent and the arguments

of the parties, we reverse Appellant's conviction.

## I.

### Factual and Procedural History

On February 1, 2005, Trooper J.K. Cox stopped a vehicle driven by Appellant and owned by James Foreman for allegedly speeding [1] near Reedy, Roane County, West Virginia. At the time the vehicle was stopped, Appellant's wife, Amy Cummings [2] was seated in the back center of the vehicle and another woman, Rachel Pritt, was in the passenger seat. Trooper Cox approached the vehicle and asked for vehicle registration and insurance information. Amy Cummings informed the trooper that the car belonged to a friend of hers, that she did not know where the vehicle information was located and asked permission to look for it. After permission was obtained, she reached across the front seat and reached into the glove compartment. Becoming concerned for officer safety after losing sight of Amy Cummings' hand and Ms. Pritt, Trooper Cox ordered the women out of the vehicle and patted them down looking for weapons.[3]

Thereafter, the trooper ordered Appellant out of the vehicle and, noticing a bulge in his pocket, asked Appellant to empty his pockets. Among the items removed from Appellant's pockets was a knife to which a small container was attached. Trooper Cox then directed Appellant to empty the contents of the container onto the vehicle's hood. Appellant complied with the trooper's request and three hydrocodone pills and two bags of a substance appearing to be methamphetamine [4] were removed from the container. Appellant was then placed under arrest and secured in the trooper's cruiser. While securing Appellant in the cruiser, the trooper observed Amy Cummings attempt to hide one of the bags containing methamphetamine. Ms. Cummings was then likewise secured in the trooper's cruiser.

Trooper Cox testified that he had observed six boxes of cold medicine containing pseudoephedrine in a yellow Dollar General bag sitting on the rear floorboard of the vehicle directly behind the drivers' seat upon his initial approach to the vehicle. This testified that based upon his experience, he was aware that cold medicine containing pseudoephedrine is a primary ingredient for making methamphetamine. After securing Appellant and Mrs. Cummings in his cruiser, the trooper searched [5] the vehicle and found a white bag containing six boxes of matches, each box containing fifty individual match packets, and also containing two bags of ten syringes each, on the rear floor board behind the passenger seat.

On May 25, 2005, the Roane County Grand Jury returned a five count indictment against Appellant.[6] Arguing that all evidence

---

1. The trooper testified at trial that he "clocked" the vehicle driven by Appellant traveling at 63 miles per hour on Route 14, near Reedy, Roane County, through the use of stationary radar. Although the trooper testified at trial that the speed limit in the area was 55 miles per hour, he testified at an earlier suppression hearing that the speed limit was 40–45 miles per hour. There is no print-out from the radar to verify the speed at which the Appellant was traveling, only the trooper's memory and report.

2. The traffic stop actually occurred about a mile down the road from where the trooper noticed the vehicle speeding, in front of the house where Amy Cummings was living at the time.

3. After verifying Amy Cummings was not armed, Trooper Cox permitted her to telephone the vehicle's owner, Roger Foreman, to determine where the vehicle information was located. At the time that call was made, law enforcement personnel were at the Foreman residence executing a search warrant related to the operation of a

methamphetamine laboratory. It appears that one of the officers executing the search warrant actually answered Ms. Cummings' call.

4. The substance later tested positive as methamphetamine.

5. The trooper testified during the suppression hearing that the Cummings consented to the vehicle search although Appellant argues any such consent was not voluntary.

6. The indictment included one count of operating a clandestine drug laboratory by assembling chemicals and equipment, including six boxes of matches, six boxes of cold medicine containing [pseudoephedrine], and two bags of syringes for the purpose of manufacturing methamphetamine, one count of attempting to operate a clandestine drug laboratory by assembling chemicals and equipment, including six boxes of matches, six boxes of cold medicine containing

against him was obtained pursuant to an illegal search, Appellant moved to suppress all evidence gathered during the February 1, 2005, traffic stop. A suppression hearing was held on October 6, 2005, at which Trooper Cox testified regarding the traffic stop and attendant search. By order dated November 17, 2005, the trial court granted Appellant's suppression motion, in part, and denied it, in part. By its order, the trial court suppressed all evidence of the container contents because it was obtained in violation of Appellant's Fourth Amendment rights. The trial court noted that while the trooper was justified in requiring the Appellant to empty his pockets, there was no justification to require Appellant to open the container and empty its contents.[7] Accepting the troopers' testimony that the bag containing six boxes of cold medicine containing pseudoephedrine was in plain view in the back seat as the trooper approached the vehicle, the trial court refused to suppress the cold medication evidence. Rejecting the argument that the bags found in the car constituted "fruit of the poisonous tree"[8], the trial court found the trooper justified in searching the vehicle due to his observation of the cold medicine in plain view and its incriminating character being immediately apparent to him. Accordingly, the trial court held that the cold medicine, matches and syringes would be admissible at trial subject to the State laying a proper foundation.

This matter proceeded to trial on November 29, 2005, and was submitted to the jury upon two counts of the indictment, the count of attempting to operate a clandestine drug lab and the count of conspiracy to attempt to operate a clandestine drug lab. The only evidence presented by the State was the testimony of Trooper Cox, the six boxes of cold medicine containing pseudoephedrine, the six boxes of matches and the syringes. In sum, Trooper Cox testified that pseudoephedrine was a principal ingredient for making methamphetamine, that red phosphorous, such as that found on match strike plates was needed for the methamphetamine making process and that syringes are used to inject liquid methamphetamine. No evidence was presented by the State indicating that the materials belonged to Appellant, that he had purchased them or that he was aware of their presence in the vehicle. Appellant moved for judgment of acquittal at the close of the State's evidence arguing that there was no evidence connecting the cold medicine, matches and syringes to him. Further, he argued that there was no evidence that he assembled the materials with the intent to make methamphetamine. Finally he argued that there was no evidence of a conspiracy other than being in the same car with a person, Amy Cummings, named as his coconspirator.[9] Finding the State had made a *prima facie* case, the trial court denied Appellant's motion. Appellant presented no witnesses in rebuttal and the jury returned a verdict of guilty on both counts of the indictment.

After the trial court denied Appellant's post-trial motions for judgment of acquittal based upon insufficiency of evidence, for new trial based upon undisclosed evidence and expert qualifications, and for arrest of judgment due to failure of the indictment, Appellant was sentenced and the instant appeal ensued. In this appeal Appellant raises 3 assignments of error: (1) the trial court erred in failing to suppress evidence found

---

[pseudoephedrine], and two bags of syringes for the purpose of manufacturing methamphetamine, one count of possession of a controlled substance, methamphetamine, with intent to deliver, and two counts of conspiracy relating to the each of the prior counts of operating and attempting to operate a clandestine drug laboratory.

7. As a result, the possession charge was dropped.

8. Appellant argued in support of his motion to suppress that the vehicle would not have been searched but for the discovery of the methamphetamine in the container attached to the knife. Likewise, the cold medicine would not have appeared to be incriminating but for the illegal discovery of the methamphetamine.

9. It appears from the record before this Court that the third person in the vehicle, Rachel Pritt, was not charged with any crime. It is unclear from the record as to why she was not called by the State as a witness at trial.

during the vehicle search[10]; (2) the circuit court erred in denying Cummings' motion for judgment of acquittal due to insufficiency of evidence to support a conviction, i.e, there was no evidence of intent, possession or conspiracy; and (3) the circuit court erred in denying motion for acquittal based upon a deficiency in the indictment, i.e., he was charged with assembling cold medicine containing "speudopedrine" and not pseudoephedrine, the main ingredient in the cold medicine found in the vehicle he was driving. Finding Appellant's argument regarding insufficiency of evidence to support a conviction to be dispositive of the instant appeal, we decline to address the remaining assignments of error.

## II.

### Standard of Review

As the dispositive issue in this matter is whether the circuit court erred in denying Appellant's motion for judgment of acquittal based upon insufficiency of the evidence, we apply a *de novo* standard of review. *State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996). This Court explained the standard of review for a claim of insufficiency of evidence in Syllabus Point 1 of *State v. Guthrie*, 194 W.Va. 657,194 W.Va. 657, 461 S.E.2d 163 (1995), wherein it held:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Further, Syllabus Point 3 of *Guthrie* explains:

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

This Court has also stated:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Syllabus Point 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), *overruled on other grounds by State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). With these standards in mind, we now examine Appellant's conviction.

### III.

### Discussion

Appellant was convicted of attempting to operate a clandestine drug lab in viola-

---

10. Appellant's argument in this respect is two-fold. First, he argues the cold medicine was not in "plain view" at the time of the vehicle stop. Therefore, its presence and alleged incriminating nature would not trigger authority to search the vehicle. Secondly, he argues the items discovered during the vehicle search, the cold medicine, matches and syringes, constitute "fruits of the poisonous tree" because the vehicle search was prompted by the illegal container search resulting in the discovery of the methamphetamine.

tion of W. Va.Code § 60A–4–411 (2003) and conspiracy[11] to attempt to operate a clandestine drug lab in violation of W. Va.Code § 60A–4–411 (2003). West Virginia Code § 60A–4–411 provides:

(a) Any person who operates or attempts to operate a clandestine drug laboratory is guilty of a felony and, upon conviction, shall be confined in a state correctional facility for not less than two years nor more than ten years or fined not less than five thousand dollars nor more than twenty-five thousand dollars, or both.

(b) For purposes of this section, a "clandestine drug laboratory" means any property, real or personal, on or in which a person assembles any chemicals or equipment or combination thereof for the purpose of manufacturing methamphetamine, methylenedioxymethamphetamine or lysergic acid diethylamide in violation of the provisions of section four hundred one of this article.

(c) Any person convicted of a violation of subsection (a) of this section shall be responsible for all reasonable costs, if any, associated with remediation of the site of the clandestine drug laboratory.

Appellant argues that this statute requires evidence of intent to manufacture methamphetamine and evidence of possession of the substances required for the manufacture of methamphetamine, both of which were lacking in the State's evidence at trial. The State responds that both intent and possession may be inferred from the circumstances.

In the instant matter, the State asked the jury and now asks this Court to infer intent to manufacture methamphetamine and possession of two ingredients required for such manufacture solely from evidence that Appellant was operating a vehicle, not owned by him, which contained cold medicine and matches in the rear passenger area.[12] While we agree with the State that intent[13] may often be inferred from the circumstances, we also believe that evidence of possession is necessarily required.

■ Possession of ingredients or equipment used in the manufacture of a controlled substance is akin to possession of a controlled substance. This Court has previously held that:

The offense of possession of a controlled substance also includes constructive possession, but the State must *prove beyond a reasonable doubt that the defendant had knowledge* of the controlled substance *and that it was subject to the defendant's dominion and control.*

Syl. Pt. 4, *State v. Dudick,* 158 W.Va. 629, 213 S.E.2d 458 (1975) (emphasis added). *Dudick* further explained:

In West Virginia mere physical presence on premises in which a controlled substance is found does not give rise to a presumption of possession of a controlled substance, but is evidence to be considered along with other evidence demonstrating *conscious* dominion over the controlled substance.

Syl. Pt. 3, *Dudick* (emphasis added). *See also, State v. Chapman,* 178 W.Va. 678, 363 S.E.2d 755 (1987) (*per curiam*) (reversing conviction for possession of controlled sub-

---

**11.** W. Va.Code § 61–10–31 (1971) provides, in pertinent part, that "[i]t shall be unlawful for two or more persons to conspire (1) to commit any offense against the State …, if, …, one or more of such persons does any act to effect the object of the conspiracy."

**12.** The State also argues that the presence of syringes, which may be used to inject liquid methamphetamine, provides support for the inference of intent and possession in the instant matter. However, there was no evidence presented that syringes are necessary for the operation of a clandestine drug laboratory. As such, the presence of syringes is not relevant to a finding that W. Va.Code § 60A–4–411 was violated, as they do not constitute chemicals or equip-

ment used in the manufacture of methamphetamine.

**13.** The State argues "Appellant's intent to operate a methamphetamine laboratory was formed when he decided to get in a car and drive to Parkersburg, West Virginia, to obtain an inordinate amount of cold medicine containing pseudophedrine and matches with red phosphorus, all of which are key ingredients for producing methamphetamine." The problem with this argument is that there was simply no evidence introduced at trial that Appellant drove to Parkersburg for the purpose of obtaining these materials, that he actually obtained them or that he even knew they were present in the vehicle.

stance where only evidence of possession was presence at mobile home where substance was seized).

■ The basis of the State's argument that Appellant was in constructive possession of the cold medicine and matches is his status as driver of the vehicle in which the items were found. It is commonly accepted that constructive possession may exist where the defendant has exhibited dominion, ownership or control over the contraband itself or dominion and control over the vehicle in which it was concealed. *See, e.g., United States v. Johnson,* 470 F.3d 1234, 1238 (8th Cir.2006) (contraband found under vehicle's driver's seat where defendant was vehicle's driver and fled from police); *United States v. Garcia,* 917 F.2d 1370, 1376 (5th Cir.1990); *United States v. Galiffa,* 734 F.2d 306, 316 (7th Cir.1984) (rental of vehicle in defendant's name sufficient additional evidence to justify finding of constructive possession). The Fifth Circuit has recognized, however, that while "[k]nowledge of the presence of contraband may ordinarily be inferred from the exercise of control over the vehicle in which it is concealed, [courts] also look for additional factors and circumstances evidencing a consciousness of guilt on the part of the defendant." *Garcia,* 917 F.2d at 1376–7, *citing United States v. Richardson,* 848 F.2d 509, 513 (5th Cir.1988).

This requirement of additional circumstances to justify such an inference was explained by the Tenth Circuit Court of Appeals in a case involving a conviction for possession of a methamphetamine making ingredient. In *United States v. Valadez–Gallegos,* 162 F.3d 1256 (10th Cir.1998), the court explained the government's burden to demonstrate constructive possession of the alleged contraband stating:

> we may not uphold a conviction obtained by piling inference upon inference. An inference is reasonable only if the conclusion flows from logical and probabilistic reasoning. The evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt.... To prove constructive possession when there is joint occupancy of a vehicle, the government must present direct or circumstantial

evidence to show some connection or nexus individually linking the defendant to the contraband. The government must present some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the ... contraband.

*Valadez–Gallegos,* 162 F.3d at 1262 (internal quotations and citations omitted).

■ We agree with the Tenth Circuit that a conviction arising from the possession of illegal contraband, here ingredients for the manufacturer of methamphetamine, requires the State to do more than pile inference upon inference. There must be some evidence indicating that the defendant actually or constructively possessed and assembled the methamphetamine ingredients. Accordingly, we now hold that in order to sustain a conviction for violation of W. Va.Code § 60A–4–411 (2003), by assembling any chemicals or equipment for the purpose of manufacturing methamphetamine, the State must prove beyond a reasonable doubt that the defendant had actual or constructive possession over the chemicals and/or equipment. In order to establish constructive possession where the defendant is present in a vehicle wherein such materials are found, the State must prove beyond a reasonable doubt that the defendant had knowledge of the presence of the chemicals and/or equipment to be used for the purposes of manufacturing methamphetamine and that such items were subject to the defendant's dominion and control.

Upon review of the evidence presented at Appellant's trial, we conclude that the State did not meet this burden in the instant matter. All of the State's case was presented through the testimony of one witness, Trooper Cox. There were no other witnesses. There was no forensic evidence (such as fingerprints on the cold medicine or matches). The State offered no evidence, other than that the cold medicine and matches which were discovered in the back seat of a vehicle driven by, but not owned or rented by, Appellant. The Appellant was not the only person in the vehicle. There were two other passengers either of whom may have owned some or all of the items. Neither were called by the State. There was no evidence pre-

sented that the defendant had purchased the items, either by introducing a receipt for the same containing his name or through the testimony of a person who may have sold the items to him. There was no evidence that the Appellant was even aware the items were in the vehicle prior to their discovery by Trooper Cox. There is simply no evidence to support an inference of actual or constructive possession. Absent a finding of actual or constructive possession, a finding that the Appellant was assembling the materials for the purpose of manufacturing methamphetamine is therefore not plausible. Likewise, the State failed to prove actual or constructive possession of the materials by Appellant's alleged co-conspirator, Amy Cummings. Absent evidence sufficient to meet the necessary elements of the crimes for which Appellant was charged, Appellant's convictions must be reversed.

## IV.

### Conclusion

In the instant matter, the State failed to prove the Appellant has actual or constructive possession of the materials the State alleged he was assembling for the purpose of manufacturing methamphetamine. Absent proof of actual or constructive possession of the alleged contraband, a conviction for assembling such materials in violations of W. Va.Code § 60A–4–411 necessarily fails. Simply put, there was insufficient evidence introduced at the trial of this matter to sustain Appellant's convictions for violating W. Va. Code § 60A–4–411 and for conspiracy to violate W. Va. code § 60A–4–411. Accordingly, we reverse both convictions.[14]

Reversed.

MAYNARD, Justice, dissenting:

(Filed June 27, 2007)

This case required the Court to determine whether the appellant's conviction for the felony offenses of attempting to operate a clandestine drug lab and conspiracy to attempt to operate a clandestine drug lab should stand. The majority opinion concluded that the appellant's convictions should be reversed due to its conclusion that there was insufficient evidence to sustain his conviction. Specifically, the majority found that the State failed to prove the appellant had actual or constructive possession of the drug paraphernalia found in the vehicle he was driving. For the reasons outlined below, I believe that the majority of this Court has made a grave error in reversing the appellant's conviction. Therefore, I dissent.

First, I believe that the majority's decision minimizes the seriousness of drug crimes. The drug at issue in this case, methamphetamine, also known as "meth," is one of the most destructive drugs ever introduced into society. The dangers of methamphetamine cannot be overestimated. It is highly addictive, highly potent, and easy and inexpensive to make.

Meth destroys the mind and body and harms the unborn child. It promotes the spread of HIV/AIDS and hepatitis B and C. Meth endangers law enforcement officers and burdens governments with the staggering costs of decontaminating and cleaning up meth labs. Chronic meth users often demonstrate highly violent behavior, increased nervousness, irritability, paranoia, severe depression, anxiety, schizophrenia and/or paranoia, self-absorption, auditory and visual hallucinations, mood disturbances, delusions, and homicidal or suicidal thoughts. These dangers are all the more alarming when one realizes that we are currently experiencing a meth epidemic parallel to that of crack cocaine usage in the inner cities decades ago.

In order to fully comprehend the majority's error in this case, it is necessary to review a few of the underlying key facts. The drug paraphernalia was discovered pursuant to a legitimate traffic stop as the appellant was speeding in a vehicle traveling from the direction of Parkersburg, West Virginia. Then, while approaching the driver's side of the vehicle, Trooper Cox noticed a yellow bag

---

**14.** We note that the State may not seek to retry Appellant for these charges. *See, Syl. Pt. 4, State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979) ("The Double Jeopardy Clause of the Federal and this State's Constitutions forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding").

with six boxes of cold medicine containing pseudoephedrine, which is the main ingredient for making methamphetamine. Inside the bag was a receipt dated that same day for three of the boxes of cold medicine purchased from the Dollar General Store in Parkersburg, West Virginia.

When Trooper Cox asked the appellant for his driver's license and other vehicle information, Ms. Cummings, the appellant's wife, spoke up and said that the car was not theirs and that she did not know where the vehicle information was located. Ms. Cummings, who was sitting in the middle of the back seat at the time, leaned across the seat and appeared to begin searching the glove compartment. Trooper Cox was unable to see Ms. Cummings' hands nor could he see the hands of Ms. Pritt, who was seated in the front seat on the passenger side of the vehicle. Trooper Cox explained to jurors that the hands of individuals in a vehicle are the number one thing to keep an eye on during a traffic stop and that the glove box is commonly used for concealing weapons. With that in mind, Trooper Cox asked Ms. Cummings and Ms. Pritt to step out of the vehicle so that he could search them for possible weapons.

Trooper Cox then asked the appellant to step out of the vehicle and began to pat him down in search of weapons. Thereafter, he noticed that the appellant's pants were bulging and asked him to empty his pockets onto the hood of the car. One of the items removed from his pockets was a knife. Attached to the knife was a container which contained three pills and two bags containing methamphetamine. Trooper Cox then placed the appellant in the police cruiser. As he was doing this, he noticed Ms. Cummings reaching across the hood of the vehicle in an attempt to hide the methamphetamine. After seeing all of the items and having safety concerns for himself, and with the full permission of the appellant and Ms. Cummings,

Trooper Cox searched the vehicle and found 300 factory sealed books of matches and 20 syringes. (The foregoing facts illustrate just how silly the result in this case really is. How many people carry around 300 books of matches and 20 syringes in their car?).

Let us be clear about what happened here. Trooper Cox located mass quantities of items used to make methamphetamine including pseudoephedrine, the main ingredient in making the illegal drug; matches, another important ingredient used for its red phosphorus; and syringes used to shoot methamphetamine into the body. This, of course, was after Trooper Cox had already found methamphetamine on the appellant's possession, attached to a key ring and knife in his pocket.[1]

There was no evidence presented that the individuals needed large amounts of cold medicine, matches, and needles for health or any other reason. Conversely, there was plenty of evidence showing that the appellant had constructive possession of the items which were all at arm's length, in plain view, stacked neatly in the floorboard behind the appellant's seat, and directly beside his wife, Ms. Cummings.

This case is about common sense. It is important to remember that the appellant was driving back from the direction of Parkersburg where at least some of the items were purchased that very day. The jurors heard all of the testimony below and convicted the appellant of the underlying crimes. Now, the majority of this Court has decided to set aside that verdict and replace it with their own judgment. Certainly an impartial trier of fact could reasonably find the appellant guilty of the underlying crimes.

Therefore, for the reasons stated above, I respectfully dissent.

STARCHER, J., concurring:

(Filed June 29, 2007)

The majority opinion in this case is well reasoned, and is founded on fundamental

---

1. Even though it is not an issue on appeal, I also want to briefly mention that I strongly disagree with the circuit court's ruling that the methamphetamine found on the appellant's possession was obtained in violation of his Fourth Amendment rights. The officer was well within his right to ask the appellant to empty the contents of the container which could have contained razor blades or another small sharp weapon that could have been used to injure or kill the officer. I believe police officers must have the ability to protect themselves as well as secure the safety of others during a traffic stop.

rules of fairness that we all learned in our high school civics class. The foundation of the American criminal justice system is that people are presumed innocent, and the government bears the burden of proving them guilty beyond a reasonable doubt.

This case centers on defendant Michael Cummings' conviction for attempting to operate a clandestine drug lab, and conspiracy to operate a drug lab. The defendant might very well be guilty of both offenses. The problem is, the State didn't introduce much evidence to support those charges. It is just as likely that the defendant could have been innocently riding in a car that was owned by someone else, James Foreman, whose own home was searched pursuant to a search warrant for evidence related to the operation of a methamphetamine lab.

My dissenting colleague takes the position that because methamphetamine is highly addictive, highly potent, and easy and inexpensive to make, then the defendant's presumption of innocence should be thrown out the window. Police officers should be allowed to search our homes, vehicles and pockets on a whim, and any suspicious-looking item within arm's length should be grounds for incarceration. Guilt by association and on the basis of suspicion should be the rule.

The dissenting opinion argues that because there were boxes of matches, syringes, and boxes of pseudoephedrine inside the car, within arm's reach of the defendant, then he must be guilty of something. Mr. Cummings must be guilty of conspiracy—even though no evidence was introduced to show with whom he was conspiring. And Mr. Cummings must be guilty of attempting to operate a drug lab, because he was riding in a car with household items that are, coincidentally, the same ingredients that could be used for making drugs. The two female passengers in the car are innocent, but Mr. Cummings must be guilty of something, right? So let's throw the bum in jail.

My dissenting colleague's basic argument is that you have to break a few eggs to make an omelet. A few innocent people have to go to jail to make sure we get as many guilty people in there as possible.

At trial, the prosecution's entire case was based upon speculation and supposition. To find a defendant guilty doesn't just require "common sense," as the dissent suggests. It requires that the prosecutor eliminate all reasonable doubts about the defendant's guilt. And frankly, riding in a car with matches and pseudoephedrine isn't enough to say a defendant is operating a drug lab. There must be some proof that the defendant owned or controlled the drug ingredients, not merely that they were at arm's length. And it has to be real proof, not the "Gee whiz, oh come on, he had to know! How could he not know?" kind of supposition that plays well with the voters at election time, but has nothing to do with freedom and democracy.

The majority opinion rightly and boldly refused to sacrifice the presumption of innocence on the altar of expediency, as my dissenting colleague wishes.

I therefore heartily concur.

I am authorized to state that Justice Albright joins in this opinion.