IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

No. 11-1273

FILED

**February 7, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

State of West Virginia,
Respondent

v.

Rodney L. Hypes,
Petitioner

Appeal from the Circuit Court of Nicholas County
The Honorable Gary Johnson, Judge
Criminal Action No. 09-F-17

AFFIRMED

Submitted: January 9, 2013
Filed: February 7, 2013

Gina M. Stanley, Esq.                     Patrick Morrisey, Esq.
Cabell County Public Defender Office       Attorney General
Huntington, West Virginia                  Scott E. Johnson, Esq.
Duane C. Rosenlieb, Jr., Esq.              Senior Assistant Attorney General
West Virginia Defender Services            Andrew Mendelson, Esq.
Charleston, West Virginia                  Assistant Attorney General
Attorney for Petitioner                    Charleston, West Virginia
                                           Attorneys for the Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1.      "'A statement is not hearsay if the statement is offered against a party and is his [or her] own statement, in either his [or her] individual or a representative capacity. W. Va. R. Evid. 801(d)(2)(A).' Syl. Pt. 1, *Heydinger v. Adkins*, 178 W.Va. 463, 360 S.E.2d 240 (1987)."  Syl. Pt. 7, *State v. Payne*, 225 W. Va. 602, 694 S.E.2d 935 (2010).

2.      "Although Rules 401 and 402 of the West Virginia Rules of Evidence strongly encourage the admission of as much evidence as possible, Rule 403 of the West Virginia Rules of Evidence restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence.  Specifically, Rule 403 provides that although relevant, evidence may nevertheless be excluded when the danger of unfair prejudice, confusion, or undue delay is disproportionate to the value of the evidence."  Syl. Pt. 9, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

3.      "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt.  Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

4.      "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution.  The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court.  Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Syl. Pt. 3, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

5.      "In order to sustain a conviction for violation of W. Va. Code § 60A-4-411 (2003), by assembling any chemicals or equipment for the purpose of manufacturing methamphetamine, the State must prove beyond a reasonable doubt that the defendant had actual or constructive possession over the chemicals and/or equipment.  In order to establish constructive possession where the defendant is present in a vehicle wherein such materials are found, the State must prove beyond a reasonable doubt that the defendant had knowledge of the presence of the chemicals and/or equipment to be used for the purposes

of manufacturing methamphetamine and that such items were subject to the defendant's dominion and control." Syl. Pt. 6, *State v. Cummings*, 220 W. Va. 433, 647 S.E.2d 869 (2007).

Per Curiam:

This case is before the Court upon the appeal of the Petitioner, Rodney L. Hypes, from the August 12, 2011, Order of the Circuit Court of Nicholas County, West Virginia, re-sentencing the Petitioner to a term of not less than two years nor more than ten years imprisonment for his jury conviction of operating or attempting to operate a clandestine drug laboratory. On appeal, the Petitioner argues that the circuit court erred by admitting into evidence the Petitioner's statement made two years after the events alleged in the indictment and by denying the Petitioner's motion for judgment of acquittal. Based upon a review of the parties' briefs and oral arguments, the appendix record and all other matters submitted before the Court, we affirm the circuit court's decision.[1]

I. Facts and Procedural Background

According to the testimony of the Petitioner's girlfriend, Tina Keener, on July 30, 2007, the Petitioner was living with her in an apartment located in Summersville, West Virginia. The apartment was leased solely to Ms. Keener. Ms. Keener testified, however, that the Petitioner had his own key to the apartment, that he came and went as he pleased, and that she left him alone in the apartment for long periods of time. On this date, the manager

---

[1]While this case was pending before the Court, Patrick Morrisey was sworn into office as Attorney General for the State of West Virginia, replacing former Attorney General Darrell V. McGraw, Jr. *See* W. Va. R. App. P. 41(c).

of the apartment complex, Gretchen Roop, watched the Petitioner leaving the apartment with a trash bag. Ms. Roop testified that the Petitioner acted suspiciously as he very carefully carried the trash bag to the dumpster located in the apartment complex.

Ms. Roop stated that after the Petitioner left the property, she went and looked at the trash bag "to see what he was so suspicious about." Ms. Roop tore a little hole in the garbage bag and saw peroxide and matchbooks. She took the garbage bag from the dumpster and placed it in the maintenance room and locked the door. Ms. Roop called her husband, who was a police officer. He, in turn, called a fellow officer, Shane Dellinger. The two men went to the apartment complex to examine the bag more closely. Upon examination, they discovered a bottle with smoke coming from it. The two men moved the garage bag from the maintenance room to the lawn. Based upon their examination of the contents of the bag, the Central West Virginia Drug Task Force ("Drug Task Force") was called to the scene.

Sgt. T. A. Blake of the Summersville Police Department was assigned to the Drug Task Force on July 30, 2007. He responded to the call from the apartment complex. When he arrived, he opened up the garbage bag and found peroxide bottles, matchbooks, and a couple of bottles. One bottle had some brownish-red liquid in it and another had some coffee filters stuffed in the end of it. Sgt. Blake testified that there was a smoking bottle in the garbage. He testified that this was "what's generally referred to as a gas generator. It has rock salt and another chemical in it that would cause a chemical reaction, and it would fume

2

and smoke." Sgt. Blake further testified that he found a couple of bills with Tina Keener's address on them in the garbage bag, as well as a HEET bottle and used blister bags. The officer stated that HEET contains alcohol, which is a key ingredient for manufacturing methamphetamine. Sgt. Blake testified that after going through the trash, he and another officer left the scene to obtain a search warrant for Ms. Keener's apartment. Two other officers remained at the scene to secure the apartment.

Sgt. Blake assisted in executing the search of Ms. Keener's apartment. He testified that he found several precursors to manufacturing methamphetamine including a Bernzomatic propane bottle, a camp fuel container located under the kitchen sink, iodine, a hotplate, Spa Ph, and three smoke detectors that had been removed from the ceiling. The officer stated that he found a pill bottle belonging to the Petitioner, a check stub with the Petitioner's name on it and a piece of mail with the Petitioner's name on it. Sgt. Blake also found a duffle bag containing plastic tubing, a glassy soapy bottle, which is often found in methamphetamine production because the bottles are used as gas generators, and a spatula. Finally, Sgt. Blake stated that he found a book entitled The Secret of Methamphetamine Manufacture, Uncle Fester's 7th Edition (hereafter "Uncle Fester's Cookbook"). There was no evidence of any controlled substance, including methamphetamine, found in the apartment or the garbage bag.

On March 18, 2009, the Petitioner was indicted[2] by a Nicholas County grand jury for one count of operating or attempting to operate a clandestine drug laboratory[3] and one count of conspiracy to manufacture methamphetamine.[4]

While the Petitioner was awaiting trial on these charges, on April 3, 2009, a Nicholas County Sheriff's deputy served warrants on the Petitioner for misdemeanor Sudafed purchases. After being taken into custody, the Petitioner executed a waiver of his *Miranda*[5] rights and provided a signed statement regarding his knowledge of methamphetamine manufacturing. The statement included the Petitioner's admissions that he was informed about how to make methamphetamine, and that he got his information and start with Uncle Fester's Cookbook. The Petitioner also stated that "[y]ou actually get addicted just cooking the dope more than using the dope. I could set in jail for ten years, I would still be addicted to cooking meth."

---

[2]According to the record, a warrant issued for the Petitioner's arrest after the events in July of 2007; however, the circuit court dismissed the warrant because it had not been presented to the grand jury for indictment within three terms of court. The Petitioner was re-indicted in January of 2009; however, due to "problems with the grand jury," that indictment was dismissed.

[3]*See* W. Va. Code § 60A-4-411(2010).

[4]*See* W. Va. Code § 61-10-31 (2010) and § 60A-4-401(2010).

[5]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

The State filed a motion to admit the statement as evidence under West Virginia Rule of Evidence 404(b).[6] The Petitioner filed a brief in opposition. The State argued that the statement was admissible as evidence of the Petitioner's "'intent and motive for cooking methamphetamine.'" The Petitioner, however, argued that the statement was not evidence of a crime, wrong or act because "the statement does not reference a specific instance and contains only generalized statements about how a person could manufacture methamphetamine." The Petitioner argued that the statement was inadmissible under Rule 404(b) because it was character evidence.

The circuit court conducted a hearing on the admissibility of the statement prior to trial. By Order entered August 12, 2009, the circuit court determined that the statement was admissible. The court agreed with the Petitioner that the statement was inadmissible under Rule 404(b) as evidence of "(i) Defendant's subsequent crimes and arrest or (ii) Defendant's character." Nevertheless, the court found that the statement was admissible "as

---

[6]Rule 404(b) of the West Virginia Rules of Evidence provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

*Id*.

a statement of a party-defendant,[7] made voluntarily, without coercion and after a proper *Miranda* warning." (Footnote added).

The trial commenced. When Deputy Michael Allen Hanks with the Nicholas County Sheriff's Department testified regarding the Petitioner's statement, the only objection raised by the Petitioner was that the admission was unfairly prejudicial under West Virginia Rule of Evidence 403. The Petitioner did not testify and called no witnesses. At the close of the State's case-in-chief, the Petitioner moved for a directed verdict on both counts. The circuit court dismissed the conspiracy count. The jury found the Petitioner guilty of operating or attempting to operate a clandestine drug laboratory. The Petitioner was sentenced to an indeterminate term of two to ten years and was later re-sentenced for appeal purposes.

## II. Argument[8]

### A. Petitioner's Statement

The Petitioner argues that the circuit court erred in admitting the statement he voluntarily gave to police following his arrest two years after the events alleged in the

---

[7]Under West Virginia Rule of Evidence 801(d)(2), an admission of a party-opponent is not hearsay when "[t]he statement is offered against a party and is (A) the party's own statement[.]" *Id.*

[8]Because two different standards of review will be used in review of each of the errors assigned by the Petitioner, the standard of review will be set forth within the argument section.

indictment. The Petitioner argues that his statement in 2009 did not relate back to the crime

he allegedly committed in 2007. The Petitioner maintains that the deputy who questioned

him in 2009 never asked him if he knew how to manufacture methamphetamine in 2007.

Thus, the Petitioner maintains that the admission of the statement was unfairly prejudicial.

The State, however, argues that the circuit court did not abuse its discretion in allowing the

Petitioner's statement to be admitted into evidence.[9]

The standard of review for an evidentiary ruling made by a circuit court is

whether the circuit court abused its discretion. *See* Syl. Pt. 4, *State v. Rodoussakis*, 204 W.

Va. 58, 511 S.E.2d 469 (1998) ("A trial court's evidentiary rulings, as well as its application

of the Rules of Evidence, are subject to review under an abuse of discretion standard."). As

previously mentioned, the circuit court admitted the Petitioner's April 3, 2009, statement

under West Virginia Rule of Evidence 801(d)(2). This Court held in syllabus point seven of

---

[9]While the Petitioner asserts on appeal that the statement was erroneously admitted as character evidence in violation of West Virginia Rule of Evidence 404(b), there was no objection at trial to preserve this alleged error. *See State v. DeGraw*, 196 W. Va. 261, 272 n. 15, 470 S.E.2d 215, 226 n.15 (1996)(concluding that appellant's failure to raise a Rule 404(b) objection before the trial court precluded this Court from reviewing appellant's Rule 404(b) argument and further concluding that failure to raise Rule 404(b) objection did not trigger application of plain error doctrine). Moreover, the trial court ruled that the statement was inadmissible under Rule 404(b). The circuit court also expressly prohibited any reference by the State to the subsequent crime with which the Petitioner was charged (the misdemeanor purchase of too much Sudafed). Rather, the circuit court found the statement admissible under West Virginia Rule of Evidence 801(d)(2). Given the Petitioner's failure to raise any Rule 404(b) objection at trial, we decline to review this argument on appeal.

*State v. Payne*, 225 W. Va. 602, 694 S.E.2d 935 (2010), that "[a] statement is not hearsay if the statement is offered against a party and is his [or her] own statement, in either his [or her] individual or a representative capacity. W. Va. R. Evid. 801(d)(2)(A).' Syl. Pt. 1, *Heydinger v. Adkins*, 178 W.Va. 463, 360 S.E.2d 240 (1987)." As we noted in *Payne*,

> The *Heydinger* Court also explained that the rule is sensible from a practical standpoint.
>
> > The theory underlying this evidentiary rule is that if a person's own statements are offered against him, he cannot be heard to complain that he was denied an opportunity for cross-examination. An additional justification supporting the admissibility of this class of evidence is the fact that it is inherently trustworthy. [citation omitted] Presumably, a party would not admit or state anything against his or her interest unless it was true; nevertheless, if the statement is inaccurate, the party may deny it altogether or explain why he/she made it.

*Payne*, 225 W. Va. at 611, 694 S.E.2d at 944 (quoting *Heydinger*, 178 W. Va. at 468, 360 S.E.2d at 245).

The only objection raised by the Petitioner when the statement was admitted at trial was under Rule 403 of the West Virginia Rules of Evidence. Rule 403 sets forth a balancing test for determining when otherwise relevant evidence should nonetheless be excluded at trial. Rule 403 provides: "Although relevant,[10] evidence may be excluded if its

---

[10]The Petitioner did not object to the relevancy of the evidence under Rule 401of the

(continued...)

8

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* (footnote added). In syllabus point nine of *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994), we held:

> Although Rules 401 and 402 of the West Virginia Rules of Evidence strongly encourage the admission of as much evidence as possible, Rule 403 of the West Virginia Rules of Evidence restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence. Specifically, Rule 403 provides that although relevant, evidence may nevertheless be excluded when the danger of unfair prejudice, confusion, or undue delay is disproportionate to the value of the evidence.

192 W. Va. at 168, 451 S.E.2d at 734, Syl. Pt. 9.

In the instant case, after the suppression hearing concerning the Petitioner's statement, the circuit court determined that the Petitioner's statement was relevant because "it demonstrates that the Defendant knew how to cook methamphetamine, was interested in chemistry and was addicted to cooking methamphetamine." The circuit court further determined that the statement "is evidence that the Defendant used Uncle Fester's Cookbook, which was located among the items seized from the same apartment." The circuit court next analyzed the evidence using the balancing test set forth in Rule 403 and found that the

---

[10](...continued)
West Virginia Rules of Evidence.

9

probative value of the statement was "significant" and substantially outweighed any danger of unfair prejudice. The circuit court determined that

> [w]ith the statement, itself, the only real danger of prejudice is the jury hearing that the Defendant does, in fact, know how to use the components of a methamphetamine laboratory to cook methamphetamine and that he is addicted to cooking meth. When weighed against the probative value of the statement, the risk of unfair prejudice does not require exclusion of the statement.

Based upon this Court's review of the statement and its admissibility, the circuit court correctly determined that Petitioner's voluntary statement in 2009 was relevant to the 2007 charges against him. Further, the circuit court did not err in its determination that the Petitioner's voluntary statement was not unduly prejudicial simply because the Petitioner made the statement approximately two years after the events giving rise to the charge of operating or attempting to operate a clandestine drug laboratory. The circuit court did not abuse its discretion in admitting the Petitioner's 2009 statement into evidence at trial.

## B. Sufficiency of the Evidence

The Petitioner next argues that the circuit court should have granted his motion for directed verdict on both counts, instead of just the conspiracy count. The Petitioner contends that there was insufficient evidence demonstrating that he knew the contents of the garbage bag. The Petitioner also maintains that there was no evidence that linked him to the items found in his girlfriend's apartment, and there was no evidence that showed he knew

10

how to manufacture or attempt to manufacture methamphetamine in 2007. The State, however, argues that the materials and substances found in the trash bag carried by the Petitioner to the dumpster, as well as all the materials and substances found in the residence where the Petitioner lived, are key ingredients for producing methamphetamine. Therefore, there existed sufficient evidence to support the Petitioner's conviction for operating or attempting to operate a clandestine drug laboratory in violation of West Virginia Code § 60A-4-411.

In syllabus point one of *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995), the Court established the following standard of review for sufficiency of evidence claims on appeal:

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

*Id*. at 663, 461 S.E.2d at 169, Syl. Pt. 1. The Court further held in *Guthrie* that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt

11

so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id*. at Syl. Pt. 3.

In order to be convicted of operating or attempting to operate a clandestine drug laboratory, West Virginia Code § 60A-4-411 provides:

> (a)  Any person who operates or attempts to operate a clandestine drug laboratory is guilty of a felony and, upon conviction, shall be confined in a state correctional facility for not less than two years nor more than ten years . . . .
> (b)  For purposes of this section, a "clandestine drug laboratory" means any property, real or personal, on or in which a person assembles any chemicals or equipment or combination thereof for the purpose of manufacturing methamphetamine . . . .

*Id*.

In support of the Petitioner's argument that the evidence was insufficient, he relies upon this Court's decision in *State v. Cummings*, 220 W. Va. 433, 647 S.E.2d 869 (2007).  In *Cummings*, the appellant was driving a vehicle that was owned by another individual.  There were two other occupants in the car with the appellant when the vehicle was stopped by police.  After the initial stop, the police officer ordered the occupants, including the appellant, out of the car.  Because the officer observed a bulge in the appellant's pocket, the appellant was asked to empty his pockets.  The items taken from the appellant's pockets

included a small container holding three hydrocodone pills and two bags of a substance appearing to be methamphetamine. The appellant was placed under arrest and the car was searched. As a result of the search, the police officer found six boxes of a cold medicine containing pseudoephedrine, a white bag containing six boxes of matches and two bags of ten syringes. *Id.* at 436, 647 S.E.2d at 872. The charges against the appellant included operating or attempting to operate a clandestine drug laboratory and conspiracy. *Id.* at 436-37, 647 S.E.2d at 872-73. A jury convicted the appellant of this crime. *Id.*

On appeal, the appellant, in *Cummings*, argued sufficiency of the evidence in relation to the charge of operating a clandestine drug laboratory. This Court reversed the appellant's conviction, holding that

> In order to sustain a conviction for violation of W. Va. Code § 60A-4-411 (2003), by assembling any chemicals or equipment for the purpose of manufacturing methamphetamine, the State must prove beyond a reasonable doubt that the defendant had actual or constructive possession over the chemicals and/or equipment. In order to establish constructive possession where the defendant is present in a vehicle wherein such materials are found, the State must prove beyond a reasonable doubt that the defendant had knowledge of the presence of the chemicals and/or equipment to be used for the purposes of manufacturing methamphetamine and that such items were subject to the defendant's dominion and control.

220 W. Va. at 435, 647 S.E.2d at 871, Syl. Pt. 6.

The Court based its reversal upon the following:

13

Upon review of the evidence presented at Appellant's trial, we conclude that the State did not meet this burden in the instant matter. All of the State's case was presented through the testimony of one witness, Trooper Cox. There were no other witnesses. There was no forensic evidence (such as fingerprints on the cold medicine or matches). The State offered no evidence, other than that the cold medicine and matches which were discovered in the back seat of a vehicle driven by, but not owned or rented by, Appellant. The Appellant was not the only person in the vehicle. There were two other passengers either of whom may have owned some or all of the items. Neither were called by the State. There was no evidence presented that the defendant had purchased the items, either by introducing a receipt for the same containing his name or through the testimony of a person who may have sold the items to him. There was no evidence that the Appellant was even aware the items were in the vehicle prior to their discovery by Trooper Cox. There is simply no evidence to support an inference of actual or constructive possession. Absent a finding of actual or constructive possession, a finding that the Appellant was assembling the materials for the purpose of manufacturing methamphetamine is therefore not plausible. Likewise, the State failed to prove actual or constructive possession of the materials by Appellant's alleged co-conspirator, Amy Cummings. Absent evidence sufficient to meet the necessary elements of the crimes for which Appellant was charged, Appellant's convictions must be reversed.

220 W. Va. at 440-41, 647 S.E.2d at 876-77.

In the instant case, unlike the evidence examined by the Court in *Cummings*, there was testimony from the apartment manager that she witnessed the Petitioner carrying the garbage bag with drug precursors in it to the dumpster. There was also testimony and evidence that the Petitioner resided in the apartment where methamphetamine ingredients and precursors were found. The Petitioner's girlfriend testified that the Petitioner came and went

14

from the apartment as he pleased because he had his own key to the apartment. She testified that she had no knowledge of what was going on in her apartment. The Petitioner's girlfriend testified that she had never cooked methamphetamine and that she could not buy Sudafed because she did not have a photo identification. Further, the Petitioner's own statement demonstrated that he was addicted to making methamphetamine and learned how to make the illegal drug from Uncle Fester's Cookbook, a book that was seized as evidence from his girlfriend's apartment. The jury, therefore, was presented with sufficient evidence that the Petitioner had "actual or constructive possession over the chemicals and/or equipment" to be used for the purposes of manufacturing methamphetamine and "that such items were subject to the defendant's dominion and control." 220 W. Va. at 435, 647 S.E.2d at 871, Syl. Pt. 6, in part. Consequently, after reviewing the evidence in the light most favorable to the prosecution, the Court concludes that there existed sufficient evidence to sustain Petitioner's conviction of operating or attempting to operate a clandestine drug laboratory in violation of West Virginia Code § 60A-4-411. *See Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pts. 1 and 3.

## III. Conclusion

Based upon the foregoing, the decision of the Circuit Court of Nicholas County is affirmed.

Affirmed.

15