# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 18-0065** (Gilmer County 16-F-4)

**Kenneth Lee Morgan,**
**Defendant Below, Petitioner**

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kenneth Lee Morgan, by counsel Steven B. Nanners, appeals the Circuit Court of Gilmer County's January 8, 2018, order sentencing him to an effective five- to twenty-five-year term of incarceration following a jury trial. The State of West Virginia, by counsel Benjamin F. Yancey III, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for judgment of acquittal based on the sufficiency of the evidence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2016, petitioner was indicted on one count of possession of a controlled substance with the intent to deliver,[1] one count of possession of altered pseudoephedrine,[2] one count of operating or attempting to operate a clandestine drug laboratory,[3] and three counts of conspiracy to commit a felony.[4]

---

[1]*See* W. Va. Code § 60A-4-401(a)(ii).

[2]*See* W. Va. Code § 60A-10-4(d).

[3]*See* W. Va. Code § 60A-4-411(a).

[4]*See* W. Va. Code § 61-10-31.

1

Petitioner's jury trial on these charges commenced in June of 2016. The State called Sergeant Casey Jones of the Gilmer County Sheriff's Department who testified that he responded to a complaint of a vehicle stopped in the middle of a roadway in Gilmer County, West Virginia. Upon investigation, Sergeant Jones found petitioner in the passenger seat of the vehicle and codefendant Joshua Rigsby ("Mr. Rigsby") in the driver's seat; both occupants of the vehicle were unresponsive. Sergeant Jones testified that he also noticed "a real strong chemical odor" in the vehicle that he believed to be related to methamphetamine. Sergeant Jones removed a backpack from behind the passenger seat of the vehicle and "opened the top for it to vent." He testified that the backpack contained "jars and containers which appeared to be an inactive meth lab." Sergeant Jones attempted numerous times to wake petitioner, but was unsuccessful. At that point, Sergeant Jones testified that he called emergency medical personnel to transport petitioner to the hospital and called the State Police to assist with the methamphetamine lab. Sergeant Jones searched petitioner and found plastic tubing, "numerous snort tubes," and several plastic bags on his person. He testified that he recognized the plastic tubing found in petitioner's possession as tubing used in the production of methamphetamine. Afterwards, petitioner was transported to the hospital.

Sergeant Jones searched the vehicle and found "a black daisy container" with "a white, crushed up substance" inside; "a small pill container" containing crushed "Allegra D" tablets; several empty plastic bags; a "white powder" inside a plastic bag; a large mallet; a butane torch; and a notebook believed to be a "ledger." Sergeant Jones testified that all of the items were found either on the console between the vehicle's front seats or in the floor in front of the passenger seat. Additionally, Sergeant Jones found two "tiny envelopes[] with powder inside believed to be heroin" inside petitioner's wallet, behind his driver's license. Sergeant Jones testified that he searched petitioner's name in the National Precursor Log Exchange ("NPLEX") to determine if he had purchased pseudoephedrine recently. Sergeant Jones's NPLEX search provided that petitioner purchased 1.2 grams of pseudoephedrine on September 4, 2015, and was blocked from making two additional purchases of 2.4 grams and 3.6 grams of pseudoephedrine on that same day. Finally, Sergeant Jones testified that he interviewed Mr. Rigsby who identified the backpack containing the methamphetamine lab as petitioner's.

Trooper Summers of the West Virginia State Police testified that he responded to the scene to investigate the clandestine methamphetamine lab following Sergeant Jones's call for assistance. Trooper Summers collected the backpack, took samples from the containers therein, and forwarded those samples to the West Virginia State Police Forensic Laboratory ("State Lab") for testing. Next, a representative of the State Lab testified that those samples contained methamphetamine and a chemical that is used in the clandestine manufacture of methamphetamine, sodium hydroxide. Additionally, the representative testified that the "black daisy container" contained pseudoephedrine in "pieces or chunks." Finally, the representative testified that one of the substances submitted contained heroin. Following the conclusion of the State's case, petitioner moved for a directed verdict, which the circuit court denied.

Petitioner testified that he called Mr. Rigsby and arranged to use illegal substances together. Prior to Mr. Rigsby arriving at petitioner's residence, petitioner took fourteen Xanax pills and "roughly about ten heroin stamps." Once in Mr. Rigsby's vehicle, petitioner consumed more substances and passed out in the vehicle while still in Harrison County, West Virginia. In regard to the illicit items in the vehicle, petitioner testified that he did not notice them when he entered the

2

vehicle. Petitioner also testified that the tubing found on his person was used to smoke controlled substances, but not for the manufacture of methamphetamine. Ultimately, the jury convicted petitioner on all six counts as charged.

In July of 2016, the circuit court sentenced petitioner to an effective five- to twenty-five-year term of incarceration. In November of 2017, petitioner filed a motion to be resentenced for the purpose of filing a direct appeal.[5] The circuit court held a hearing on the matter in December of 2017, and reimposed petitioner's original sentence by an order entered January 8, 2018. Petitioner appeals this order.

On appeal, petitioner argues that the circuit court erred in denying his motion for judgment of acquittal based on the sufficiency of the evidence. Petitioner asserts that the evidence showed that he obtained a ride from Mr. Rigsby in a vehicle that Mr. Rigsby owned and operated throughout the event. Evidence further illustrated that petitioner was unresponsive when law enforcement responded to Mr. Rigbsy's vehicle parked in a roadway in Gilmer County and found the inactive methamphetamine lab behind the passenger seat. Petitioner argues that the State failed to present any evidence that he had any ownership over the methamphetamine lab or any involvement in the lab's creation. Likewise, petitioner argues that the State failed to present any evidence that he possessed altered pseudoephedrine or possessed any controlled substance with the intent to deliver the same. Finally, petitioner argues that the State failed to offer any evidence that petitioner conspired with Mr. Rigsby and stresses that the State could have called Mr. Rigsby as a witness, but failed to do so. Upon review, we find petitioner is entitled to no relief.

"The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011). Moreover,

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Further,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent

---

[5]On appeal, petitioner relates that he filed a petition for a writ of habeas corpus in 2017, and the primary ground contained therein was trial counsel's failure to file a direct appeal. Thus, petitioner moved for reentry of the sentencing order in order to file a direct appeal.

with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id*. at 663, 461 S.E.2d at 169, syl. pt. 3, in part. *See also State v. Boyd*, 238 W. Va. 420, 431, 796 S.E.2d 207, 218 (2017) ("'[I]t is now well recognized and firmly settled that proof of guilt may be established by circumstantial evidence . . . .'" (quoting *State v. Bailey*, 151 W. Va. 796, 804, 155 S.E.2d 850, 855 (1967))).

In regard to a conviction under West Virginia Code § 60A-4-411(a), relating to the operation or attempt to operate a clandestine drug laboratory, we have previously held that

the State must prove beyond a reasonable doubt that the defendant had actual or constructive possession over the chemicals and/or equipment. In order to establish constructive possession where the defendant is present in a vehicle wherein such materials are found, the State must prove beyond a reasonable doubt that the defendant had knowledge of the presence of the chemicals and/or equipment to be used for the purposes of manufacturing methamphetamine and that such items were subject to the defendant's dominion and control.

Syl. Pt. 6, in part, *State v. Cummings*, 220 W. Va. 433, 647 S.E.2d 869 (2007). Additionally,

"[t]he offense of possession of a controlled substance also includes constructive possession, but the State must prove beyond a reasonable doubt that the defendant had knowledge of the controlled substance and that it was subject to the defendant's dominion and control." Syllabus Point 4, *State v. Dudick,* 158 W.Va. 629, 213 S.E.2d 458 (1975).

*Id.* at 435, 647 S.E.2d at 871, syl. pt. 4.

In viewing the evidence in the light most favorable to the prosecution, the jury could conclude that petitioner and Mr. Rigsby met to create and operate a methamphetamine lab and distribute the fruits of that operation. When Mr. Rigsby traveled to petitioner's home on September 25, 2015, petitioner was prepared with at least the 1.2 grams of pseudoephedrine he purchased earlier that month and the tubing required for the clandestine lab, which was later found on his person and identified as related to the manufacture of methamphetamine by Sergeant Jones. Once the vehicle was found in Gilmer County, it was clear that the operation had been a success because, as Sergeant Jones testified, a "real strong chemical odor" was emanating from the vehicle. Sergeant Jones discovered the lab inside the backpack located immediately behind petitioner's seat in the vehicle and later learned from Mr. Rigsby that the backpack belonged to petitioner. Evidence showed that the methamphetamine lab contained a substantial amount of methamphetamine as well as other chemicals necessary for the manufacture of methamphetamine. Additionally, items critical to the sale and distribution of controlled substances were found in the vehicle, such as multiple plastic bags and a "ledger." These items were found either between the driver's andi passenger's

seats or on the floor at petitioner's feet as he rode in the vehicle. Additional crushed pseudoephedrine was found inside the vehicle within reach of both occupants. Although petitioner relies on his own self-serving testimony to prove that he was unaware of the illicit contents of Mr. Rigsby's vehicle, the jury made a credibility determination in this instance, and such determinations will not be reconsidered on appeal. *See Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, syl. pt. 3, in part ("Credibility determinations are for a jury and not an appellate court."). We find that the evidence was sufficient for the jury to find, beyond a reasonable doubt, that petitioner operated or attempted to operate a clandestine drug laboratory because he had knowledge of the presence of chemicals and equipment to be used for the purpose of manufacturing methamphetamine and that such items were subject to his dominion and control. Accordingly, as the manufacture of methamphetamine necessarily requires altered pseudoephedrine and as crushed pseudoephedrine tablets were found in the vehicle, sufficient evidence was also presented that petitioner was in constructive possession of those substances. Likewise, we find that sufficient evidence was presented that petitioner had knowledge of the methamphetamine manufactured in the backseat of the vehicle, exercised dominion and control over that substance, and intended to deliver the same.

We also find that the State presented sufficient evidence for the jury to conclude that petitioner conspired with Mr. Rigsby to operate a clandestine drug lab, possess altered pseudoephedrine, and possess methamphetamine with the intent to deliver that substance. To prove a conspiracy, the State "must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syl. Pt. 4, in part, *State v. Less*, 170 W.Va. 259, 294 S.E.2d 62 (1981).

> The agreement to commit an offense is the essential element of the crime of conspiracy—it is the conduct prohibited by the statute. The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement.

*Id.* at 265, 294 S.E.2d at 67 (citation omitted). Here, the evidence showed that petitioner was present in the vehicle with Mr. Rigsby with an inactive methamphetamine lab contained in a backpack behind the passenger seat. *See* Syl. Pt. 10, *State v. Fortner*, 182 W. Va. 345, 387 S.E.2d 812 (1989) ("Proof that the defendant was present at the time and place the crime was committed is a factor to be considered by the jury in determining guilt . . . ."). Critically, petitioner also possessed tubing related to the manufacture of methamphetamine, as well as multiple plastic bags, which are indicative of distributing controlled substances, and had made a recent purchase of pseudoephedrine and several attempted purchases. Based on this evidence, the jury could find, beyond a reasonable doubt, that petitioner had conspired with Mr. Rigsby to operate a methamphetamine lab, possess altered pseudoephedrine, and possess controlled substances with the intent to deliver them. Therefore, we find no error in the circuit court's denial of petitioner's motion for judgment of acquittal.

For the foregoing reasons, the circuit court's January 8, 2018, sentencing order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison