# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 15-0235** (Wood County 13-F-145)

**Terry Abbott,**
**Defendant Below, Petitioner**

**FILED**

**June 3, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Terry Abbott, by counsel Richard D. Smith, Jr., appeals the order of the Circuit Court of Wood County, entered on January 14, 2015, resentencing him to a term of incarceration for four to ten years upon his conviction of operating or attempting to operate a clandestine drug laboratory, and a consecutive term of incarceration for one to five years upon his conviction of conspiracy to commit operating or attempting to operate a clandestine drug laboratory.[1] Respondent State of West Virginia appears by counsel Shannon Frederick Kiser.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was tried, together with co-defendant Rick Brock, in December of 2013, in the Circuit Court of Wood County on the charges specified above, and the details of petitioner's and his co-defendant's activities, trial, and convictions are explained in *State v. Brock*, 235 W.Va. 394, 774 S.E.2d 60 (2015). In that opinion, we described trial evidence showing that Captain Rick Woodyard of the Wood County Sheriff's Department, while wearing plain clothes and driving an unmarked car in the course of a drug investigation, observed the erratic operation of a car that was ultimately determined to have been driven by Mr. Brock. Capt. Woodyard did not stop that vehicle, but instead called for an officer in a marked car to do so. He observed West Virginia State Police Trooper C.S. Jackson stop the vehicle, but continued on after he saw that Tpr. Jackson had the situation in hand. Mr. Brock denied Tpr. Jackson's request to search the

---

[1] Petitioner was represented by attorney Robin S. Bonovitch at the time the notice of appeal and petitioner's brief were filed. However, after the conclusion of the briefing schedule, Mr. Smith informed the court that he had replaced Ms. Bonovitch as counsel and filed a motion for leave to file a supplemental brief. The Court granted that motion.

1

vehicle, and Tpr. Jackson requested a canine unit. Shortly thereafter, the canine indicated the presence of drugs, and police on the scene began a search that ended with the officers concluding that the car driven by Mr. Brock, in which petitioner was a passenger, contained a clandestine, or "shake and bake" drug laboratory. A chemist with the West Virginia State Police Forensic Laboratory confirmed that two items recovered from the vehicle contained methamphetamine. Petitioner and Mr. Brock were charged as described above. At the joint trial, neither testified on his own behalf or otherwise presented evidence in his defense. Petitioner and Mr. Brock each were convicted of operating or attempting to operate a clandestine drug laboratory and conspiracy to operate or attempt to operate a clandestine drug laboratory. Each defendant appealed.

Mr. Brock's appeal proceeded ahead of petitioner's own, and this Court entered the *Brock* opinion on May 22, 2015, addressing Mr. Brock's five assignments of error. Subsequently, on July 13, 2015, petitioner filed his initial brief with this Court, asserting the following seven assignments of error, most of which are nearly identical to those earlier advanced by Mr. Brock: (1) that his trial counsel's "performance was deficient under an objective standard of reasonableness[,] and there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different;" (2) that "the trial court erred by allowing Agent [Douglas] Sturm [of the Parkersburg Police Department] to testify regarding the effects of a meth lab as the probative value of his testimony was substantially outweighed by its prejudicial effect;"[2] (3) that "[t]he evidence adduced at trial, when viewed in the light most favorable to the state, was manifestly inadequate to convince impartial minds beyond a reasonable doubt that the defendant had knowledge of the presence of drugs or precursors in the vehicle or that the defendant exercised dominion and control over the drugs or precursors;"[3] (4) that "[t]he trial court erred by denying . . . [p]etitioner's motion to dismiss the indictment for a violation of Rule 8 of the [West Virginia] Rules of Criminal Procedure[, because e]ach count purports to charge two separate offenses, which is improper under [m]andatory [j]oinder. . . ;"[4] (5) that "[t]he trial court erred by failing to give the entirety of co-defendant and [p]etitioner's proposed instructions [No. 1 and No. 2] as they were accurate statements of the law, supported by the evidence or lack thereof adduced at trial and were not

---

[2] Compare this issue to one we addressed in *Brock*, after Mr. Brock argued that the trial court erred "in allowing expert testimony concerning the dangers and explosiveness of a methamphetamine . . . lab as the testimony was irrelevant and its probative value was substantially outweighed by its prejudicial effect." *Brock* at 399, 774 S.E.2d at 65.

[3] Compare this issue to one we addressed in *Brock*, after Mr. Brock argued that the trial court erred "in determining that there was sufficient evidence to uphold the convictions[.]" *Brock* at 398, 774 S.E.2d at 64.

[4] Compare this issue to one we addressed in *Brock*, after Mr. Brock argued that the trial court erred "in denying his motion to dismiss as both counts one and two in the indictment attempt to charge the defendant with two crimes in violation of West Virginia Rule of Criminal Procedure 8[.]" *Brock* at 398, 774 S.E.2d at 64.

2

fully covered by other instructions;"[5] (6) that "[t]he trial court erred by overriding defense counsel's objection to Officer Woodyard's testimony that he was working as part of the 'ACE' team as this was contrary to the pretrial rulings of the lower court, constituted surprise to [petitioner] at trial and the probative value of the testimony was substantially outweighed by its prejudicial effect;" and (7) that the "[t]rial court erred by denying the motion to suppress filed by the co-defendant . . . where the police lacked probable cause to search the vehicle in the possession and control of the defendant."[6] Later, after having sought and been granted leave of the Court, petitioner filed a supplemental brief asserting an eighth assignment of error, in which he argued that "[t]he circuit court in denying the motion to suppress . . . where the [initial] stop of the vehicle was unlawful as the police lacked reasonable suspicion to initiate a traffic stop."

We decline to engage in a protracted analysis of petitioner's second, third, fourth, fifth[7], or seventh assignments of error inasmuch as we gave each of those issues thorough consideration in *Brock*. We are compelled to clarify that our unwillingness to further explore these issues is intensified by petitioner's complete lack of attempt to distinguish his situation from *Brock*. (Indeed, we doubt he could have done so effectively inasmuch as the two men were tried together and neither individually presented evidence.) Petitioner did not so much as make a single citation to *Brock* in his opening brief. Moreover, when the State filed a responsive brief charging that this Court had previously resolved the very issues about which he complained, petitioner did not file an explanatory reply brief. We thus turn our attention to the remaining three assignments of error that may be novel to the convictions before us.

In his first assignment of error, petitioner argues that his trial counsel was objectively deficient and that his defense was compromised by counsel's errors. Those errors, he asserts, include counsel's failure to move for dismissal of the indictment on the ground that the stop of the vehicle was illegal and any evidence seized was "fruit of the poisonous tree," as well as counsel's representation immediately prior to trial that she was prepared to proceed on the "State v. Abbott and Abbott" case, indicating that she was not in fact ready to proceed. We have held:

---

[5] Compare this issue to one we addressed in *Brock*, after Mr. Brock argued that the trial court erred "in failing to give the entirety of . . . [p]etitioner's proposed instruction numbered one[.]" *Brock* at 398, 774 S.E.2d at 64.

[6] Compare this issue to one we addressed in Brock, after Mr. Brock argued that the trial court erred "in denying the [p]etitioner's motion to suppress[.]" *Brock* at 398, 774 S.E.2d at 64-65.

[7] Petitioner's assignment of error refers to the first two instructions, and *Brock* addresses only the first. There is no reference to an appendix citation to show how petitioner presented the instructions, the proposed content of his instructions, or how the court addressed his proposals. Nevertheless, respondent asserts that petitioner's instructions No. 1. No. 2, and No. 3 "were given verbatim by the circuit court." Respondent further asserts that it was only the instruction proposed by Mr. Brock that was given in part. Petitioner filed no reply brief disagreeing with these assertions.

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 6, 459 S.E.2d 114, 117 (1995). However, we also have held:

"It is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim." Syl. pt. 10, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992).

Syl. Pt. 4, *State v. Woods*, 194 W.Va. 250, 460 S.E.2d 65 (1995). We find no objective unreasonableness in counsel not having filed a motion to dismiss the indictment based on a challenge to the evidence obtained after the stop, particularly because a motion to suppress was filed to address the issue of the legality of the stop and the seizure. Also, the limited representation (made without citation to the appendix record on appeal) that petitioner informed the circuit court that she was prepared to proceed in the "Abbott and Abbott" trial, does not alone show that counsel was unprepared for the trial of petitioner and Mr. Brock. Petitioner has offered no reason that we should find this to be the exceptional "rare case" where the prudence of counsel's actions is evaluated on direct appeal, and we thus will not further consider petitioner's claims of ineffective assistance of counsel at this time.

We turn to petitioner's sixth assignment of error, wherein he argues that the circuit court erred in overruling his objection to Officer Woodyard's testimony that he was working as part of the "ACE" team. We consider this assertion while remaining mindful that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 61, 511 S.E.2d 469, 472 (1998). Petitioner argues that the circuit court's ruling was inconsistent with the court's pretrial rulings; however, the motion in limine to which petitioner appears to refer asked the circuit court to eliminate any reference to a certain location as a "drug house," and the trial court's ruling on that motion did not prohibit the State from eliciting evidence about Capt. Woodyard's police duties.

Moreover, in the brief three-sentence argument that petitioner offers in support of this, the sixth assignment of error, petitioner fails to include a citation to the appendix record on appeal. We will not go rummage about in the record hoping to stumble upon offensive testimony for which petitioner neglected to search. As we often find ourselves reminding litigants, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that petitioner's brief

4

contain an argument exhibiting clearly the points of fact and law presented. That rule also requires that such argument "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." In an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, Chief Justice Ketchum specifically noted in paragraph 7 that "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal' as required by rule 10(c)(7)" are not in compliance with this Court's rules. We find no error in the circuit court's ruling.

Finally, we address petitioner's eighth assignment of error, wherein he argues that the circuit court erred in denying his motion to suppress evidence on the basis that the stop of the automobile was illegal. We attach the following standard of review to our evaluation of this issue:

> "On appeal, legal conclusions made with regard to suppression determinations are reviewed *de novo*. Factual determinations upon which these legal conclusions are based are reviewed under the clearly erroneous standard. In addition, factual findings based, at least in part, on determinations of witness credibility are accorded great deference." Syl. Pt. 3, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994).

Syl. Pt. 1, *State v. Dunbar*, 229 W.Va. 293, 294, 728 S.E.2d 539, 540 (2012). Though we considered the suppression issue in the context of the search in *Brock,* petitioner accurately observes that we did not specifically address the issue of whether officers had a reasonable suspicion to effect the initial stop, a point that Mr. Brock's counsel conceded during oral argument before this Court. *Brock* at 403 n. 8, 774 S.E.2d at 69 n. 8. "Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. Pt. 1, in part, *State v. Stuart*, 192 W.Va. 428, 429, 452 S.E.2d 886, 887 (1994). Petitioner's argument rests on his assertion that there was no testimony that the car stopped by the officers was being driven erratically, and further on his accusation—without any citation to the record—that it was, in fact, Capt. Woodyard who drove dangerously. In parcel of these arguments, petitioner emphasizes that "[t]he trial court heard no testimony of who drove the vehicle erratically" and that "no officer ever testified to and the trial court did not hear testimony regarding who performed the erratic driving of the vehicle." We first firmly reject the implication that an officer must be familiar with a driver's identity to form a reasonable, articulable suspicion that a person in the vehicle has committed, is committing, or is about to commit a crime. Next, we note that the only testimony concerning erratic driving offered at the suppression hearing, was that of Capt. Woodyard, who testified:

> . . . As the vehicle approached the 1000 block . . . it went left of center. It also went left of center on a couple of other occasions between the 1000 block and the stoplight at E Street, Pike and Camden. . . . It proceeded through the light on to the E Street Bridge where once again it went across the yellow line. They also

kept applying their brakes repeatedly. As I would get close, and I was following from several car-lengths away, they would tap their brakes. . . . As they went through the viaduct at E Street underneath the train trestle they went right of the fog line. At that point I was calling for a marked cruiser to intercept the vehicle to do a traffic stop.

We have explained:

> ". . . The Fourth Amendment requires 'some minimal level of objective justification' for making the stop." [*United States v. Sokolow*,] 490 U.S. [1] at 7, 109 S.Ct. [1581] at 1585, 104 L.Ed.2d [1] at 10 [(1989)]. (Citations omitted). The criteria for reasonable suspicion to stop a vehicle are very similar to a street stop under *Terry* [*v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]. Factors such as erratic or evasive driving, the appearance of the vehicle or its occupants, the area where the erratic or evasive driving takes place, and the experience of the police officers are significant in determining reasonable suspicion.

*State v. Stuart*, 192 W. Va. 428, 433 n. 10, 452 S.E.2d 886, 891 n. 10 (1994). We find Capt. Woodyard's testimony describing erratic driving sufficient under these standards to establish his reasonable, articulable suspicion for the stop. We therefore find no error in the circuit court's denial of the motion to suppress.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 3, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II